I would like to turn to the Sixth Amendment speedy trial issue and I would certainly hope that there is not a question as to whether it was properly raised and exhausted. But the critical thing, I think, about this case and about this issue is that it's not just a Sixth Amendment speedy trial issue. It also involves the other important aspect of the Sixth Amendment, the right to counsel, because in the trial court, Mr. Benge was arguing against his lawyer in asserting his speedy trial rights. And in Powell v. Alabama, back in the 30s, we were told that a defendant requires the guiding hand of counsel at every stage of the proceedings against him, and certainly that was lost here. This is all sort of arises from the November 21st hearing, this Excerpt E from the Respondent's Excerpts of Record, and it starts, of course, with the Barker factors, Barker v. Wingo, the length of the delay, the reason for the delay, the assertion of the speedy trial right and the prejudice. And the Court there said that no factor is necessary or sufficient, but in combination here, they establish a violation. Starting with the length of the delay, and there was some confusion along the way as to what that means, but in Doggett v. United States, it was very clear, and it's been clear in all of the cases. It talks about the interval between the accusation and the trial. And in this Court, this case, that was a matter of 13 months. The State cites United States v. Valentine, where the Court said 6 months is borderline. And I would also cite the Court's United States v. Murillo at 288F3rd 1126, page 1132. Where it said that 13 months, the time period we have here, was presumptively prejudicial. And Murillo was a much more complicated case. That was a complex murder case which had death penalty implications. So certainly, the length of the delay gets us started with the presumption that there was prejudice. The second comes to the reason for the delay. And I think we need to, again, look at the record, look at Excerpt E, and look at this The trial is set 7 months after indictment. This hearing is set about a month before trial. The Court comes on the bench, and the judge says, I hear there's a motion coming. I haven't seen it, but I'm going to grant the continuance. And this is after hearing the defense lawyer say, my client may have a problem with this. So without anything in front of him, the judge grants the continuance. What was in the written motion that the parties didn't argue with the judge? I believe that the defense lawyer said that it was a complicated case. That is belied by the record, because at page 8 of Excerpt E, the prosecutor said, well, depending on your ruling about prior bad act evidence, this could be a three-day trial. And the prosecutor quotes the defense lawyer on that. And the defendant, when he gets up, says, Judge, this is not that complicated of a case. I've been through the disclosure three times myself. And so the judge comes out and basically says, I'm going to put it off until the end of March without hearing anything. And that's when we get into kind of the minutiae that the lower court talked about. We've got the prosecutor saying, well, I don't want it at the end of March, because I'm tentatively going to a seminar the next week. That's at page 5. At page 6, the co-defendant, who ends up being severed, says he's scheduled to be out of town then and his second child is due, and how about the end of going into April? And that's when the trial judge says, that's turkey season. He's going hunting, and so there's not going to be a trial then. The court then suggests at page 7 that let's do it May 12th, and the defense attorney says, that's okay with me, but it's not okay with my client. So again, they're in conflict. The court then continues the case until May 12th, and I submit to the court that at a minimum this is negligence. I mean, it's not a matter of the State or the court trying to beat up on Mr. Benj, but it is a matter of there being no good reason that this goes on for 13 months. The next thing that comes up is the assertion of the right, and of course, Mr. Benj asserts it on his own behalf. He gets up and says, I object, I object, I assert my constitutional speedy trial rights, and says I want my lawyer to withdraw, his appointed lawyer to withdraw if he can't be ready within a month of the scheduled trial date. And the defense lawyer says, okay, well, I'm going to move to withdraw. Mr. Benj again argues on his own behalf a speedy trial violation, and then the court at page 13 denies the substitution. And this is where the district court went wrong in its May 6th order. Scalia, do you have a speedy trial act like the U.S. does? I'm from Arizona, Your Honor. What's that? Arizona. Excuse me, Arizona. There's a speedy trial rule that sets a certain number of days. It's a rule of court or a rule of law? It's a rule of criminal procedure. The Supreme Court of the legislature. Now, the Arizona Supreme Court by State constitution has the rulemaking procedural function. So it's a rule. Was that violated in this case? Well, in my opinion, it was. The State court said it wasn't. That's correct. Okay. So now you have to rely upon the Sixth Amendment. Exactly. The Sixth Amendment is more strict than the rule or less strict than the rule? Well, that depends how you look at it. The rule talks about a certain number of days, and it talks about when continuances can be had and under what conditions. Obviously, the Sixth Amendment, it depends on the four-part Barker test. So you could have a case that the Sixth Amendment's violated, the State rule is not, or vice versa. But under these circumstances and these unusual circumstances, it was violated, the Constitution. The district court said, well, that after the judge said he was going to set the trial in May, that Mr. Benjamin may have withdrawn the objection by saying he would hold the court to that. But that is after he makes his argument, and the court recognized, the State trial court on the record in that Excerpt E hearing, that Mr. Bench had objected to the continuance. And the district court also said, well, Mr. Bench didn't raise that again and held that against him, but what's he supposed to do? He's gotten up and over his lawyer's objection and not only demanded a speedy trial, but asked for a different lawyer. And despite that fact, he's told, no, you can't have another lawyer, you can't have a speedy trial. So I don't know what else it could be that he was to have done. Finally, the issue is prejudice. And of course, in Doggett v. United States, 505 U.S. at 655, the Court stated, and I quote, But what Mr. Bench interestingly said in his petition for habeas corpus was, I had another case in the same court and demanded a speedy trial and ended up getting it dismissed and I won. And the other thing that's of record in this case, on June 25th of 2002, Mr. Bench  And the documents that support that in the habeas demonstrate that he had, and had at the time of trial, an eye disease, that he'd already lost his sight in one eye and that he was losing the sight in his other eye, and that's essentially why counsel was appointed. And so there is prejudice, and if we add the four parts together, I would suggest to the Court that he did establish a speedy trial violation and a violation of the Sixth Amendment. Thank you, counsel. Good afternoon. May it please the Court. My name is Diana Costa. I'm from the Arizona Attorney General's Office, representing the Respondents in this case. Mr. Benchy is not entitled to habeas relief in this case. Could you speak here? Mr. Benchy in the Arizona Attorney General's Office prosecuted this case, and he was really we were under the assumption that his name was pronounced Benchy, so please excuse me if I keep referring back to the name that we've been using all along. Benchy is not entitled to habeas relief in this case because the speedy trial claim is completely meritless, and the evidentiary claim is defaulted and meritless also. This was a very interesting case when it was presented at trial, but it gets even more interesting as the appeal process goes on because Mr. Benchy keeps expanding on his claims. Petitioner now says that the speedy trial claim that he raised on direct appeal includes a right to counsel. That claim has never been brought at any point in this proceeding. Under the Federal Constitution, it does not require that the trial be held within any particular time period, and to determine if the delay warrants reversal, we use the Barker v. Wingo four-part balancing test. Normally, under the test, the delay is measured from the date of accusation, but on direct appeal in the state court, the only claim that was raised there was the five-month delay between December and January. And under the state rule, the Arizona Court of Appeals found that there was no violation of the speedy trial right. On habeas, Mr. Benchy specifically said that the trial court erred by using turkey season as a reason to extend the case beyond April 1st. So now he's only claiming that the six-week delay between April 1st and May 12th was when his speedy trial right was delayed. Six weeks, the judge went turkey hunting? Well, you know, it's very interesting because we're not exactly sure who. The record's not clear what that referenced turkey hunting. Were they just telephone trials in Arizona during turkey hunting season? You know, Your Honor, I've lived in Arizona for 20 years and I've never heard of turkey season, so I really cannot explain exactly what they were talking about. When they said, when the prosecutor says, well, why don't we go to the middle of the early April or wherever it was, and the judge said that's turkey season. And everybody just continued on. Nobody stopped to question. Nobody asked, what would he mean? Where are you going? Who's going where? No one said anything at that point. But the fact is, is that on appeal, Mr. Benchy only was arguing that the five-month delay violated his constitutional right to speedy trial. And now on habeas, he's reduced that to a six-week period. What did the state court say about turkey hunting? Pardon me? What did the state court say about turkey hunting? Well, the state court looked at the delay under Rule 8 of the Arizona Rules of Criminal Procedure, excuse me. And they found that the right wasn't, there was no violation. They didn't specifically address the turkey. Did they discuss that comment at all? No, not, no. They just ignored it, that reason for the delay? It was the delay that, actually, what they, under the state rule is, was the delay, did the amount of delay count at all? And because his counsel asked for the delay, and they found that in, that justice warranted a delay in the trial, that time was what we, what was called excluded time under the rule. So there was no violation whatsoever. We're supposed to ignore it, that the statement was made? Well, that was the reason given, and for that reason, the trial was moved approximately two weeks. If you, in the, the record is quite clear as to who suggested what time the trial should be delayed after defense counsel initially requested the delay. And, so they said, how about the middle of May? And the judge said, well, that's turkey hunting season. And so then they scheduled it for what, two weeks later? Yes, the, the, yes, the trial was, was scheduled then for May 12th. That was, I thought the May was the turkey hunting. Apparently, the end of April was turkey hunting. Oh, the end of April was turkey, and then they set it for May 12th. Yes, that was the next, from the record, it appeared was the next available date. Okay. So the delay that was attributable to turkey hunting was only two weeks? Exactly. It was even less than what Mr. Benji is complaining about on the habeas. So, the, but there, but the Barker v. Wingo test has a, has a preliminary test of presumptive prejudice, and the United States Supreme Court has said that when the delay starts approaching the one-year mark, then there's presumptive prejudice. And that's used, that's a triggering mechanism to see if there, the, there should be any inquiry into the remaining factors. And this delay, whether it's measured in the five months that he challenged in the state court, or the six weeks, or the two weeks, or the one month, certainly does not approach the presumptive prejudice of one year. So, we really, this Court should really not inquire on the other factors. There, there, his claim is, is meritless, and the district court properly denied the petition on the, on the merits of that claim. Does this Court have any further questions? Then, exercising a moderate degree of common sense, I will sit down. Thank you, Katz. I believe I had about a minute left, and I just want to do a couple of things. One is, I want to be clear. I'm not claiming a right to counsel violation, but it's just something that the Court needs to consider in the overall picture of the speedy trial violation. And as far as the, the amount of time that Mr. Bench complained about or the, or the Court looked at, it's a matter of law that it's from accusation to trial is our position. And, and what, to the extent it might matter, what he said in his pro se petition was, I told the judge that I did not wish to give up my speedy trial rights, and I feel that if I had been given my constitutional right to a speedy trial, the outcome of my trial would have been different, period. And then the Court clearly erred by using the turkey season as a reason to extend the case beyond April 1998. And, and just if the Court has, has expressed some curiosity, because I'm from Tucson and practiced there and know Judge Fields, that's exactly what he was talking about, is he was going out to try to shoot turkeys. And, and that was, took precedence, but it did not appear in the State court's opinion. Thank you. Thank you. The case is argued will be submitted. The Court will stand, it will take, stand adjourned for the morning. All rise. The Court is adjourned.
judges: Ferguson, Reinhardt, Paez